**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **ZANE HARDIN,** | ) | CIV-F-08-0617 AWI GSA |
| | ) | |
| **Plaintiff**, | ) | |
| | ) | **ORDER RE: MOTION TO DISMISS** |
| **v.** | ) | |
| | ) | |
| **WAL-MART STORES, INC.; and DOES 1-100,** | ) | |
| | ) | |
| **Defendants**. | ) | |
| | ) | |

**I. History**[1]

Plaintiff Zane Hardin ("Plaintiff") has been an employee of Defendant Wal-Mart ("Defendant") for several years.  Plaintiff alleges he has been mistreated in a variety of ways by Defendant's supervisors including Defendant Gregory Cox ("Cox").  The consequences of these actions also affect Plaintiff's wife, Plaintiff Ruth Hardin.

Plaintiff originally filed this case in state court on March 20, 2008; at that time, Cox and Ruth Hardin were not parties to the case.  Plaintiff's original complaint contained four causes of action: employment discrimination based on age and disability in violation of California's Fair Employment and Housing Act ("FEHA"); violation of the Americans with Disabilities Act;

---

[1]The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

refusing to allow disabled employees to use disabled parking in violation of California's

Business & Professions Code §17200; and refusing to allow disabled employees to use disabled

parking in violation of California Civil Code §51.  Defendant removed the action to federal court

based on diversity jurisdiction.  After two rounds of motions to dismiss, the Americans with

Disabilities Act claim was dropped, but the other three remained.  Defendant made a motion for

summary judgment.  In opposition, Plaintiff raised evidence relating to matters arguably not

encompassed in the operative complaint.  Defendant asked the court to ignore that evidence, or in

the alternative, to allow time for additional discovery on those matters.  The court treated the

matter as a motion to amend the complaint and granted leave to amend.

The operative Third Amended Complaint ("TAC") lists fourteen causes of action: (1)

FEHA; (2) California's Business & Professions Code §17200; (3) California Civil Code §51; (4)

intentional infliction of emotional distress; (5) breach of contract; (6) promissory estoppel; (7)

fraudulent and negligent misrepresentation; (8) conversion; (9) civil assault; (10) negligent

infliction of emotional distress; (11)wrongful demotion; (12) breach of third party beneficiary

contract; (13) defamation; and (14) elder abuse. Doc. 100.  In the TAC, Plaintiff has added Cox

as a defendant and Ruth Hardin as a plaintiff.  A few days later, Plaintiff filed an amendment to

the TAC, seeking to add a fifteenth cause of action entitled "labor violations."  Doc. 103.

Defendant has filed a motion to strike and a motion to dismiss claims 1, 2, 3, 5, 6, 7, 9, 10, 12,

14, and 15 for failure to state a claim and lack of administrative exhaustion. Doc. 111.  Plaintiff

opposes the motions and the matter was taken under submission without oral argument.


## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule

12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient

facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

1    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

2    of action will not do. Factual allegations must be enough to raise a right to relief above the

3    speculative level, on the assumption that all the allegations in the complaint are true (even if

4    doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that

5    actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56

6    (2007), citations omitted.  "[O]nly a complaint that states a plausible claim for relief survives a

7    motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the

8    Court of Appeals observed, be a context-specific task that requires the reviewing court to draw

9    on its judicial experience and common sense. But where the well-pleaded facts do not permit the

10   court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it

11   has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

12   (2009), citations omitted.  The court is not required "to accept as true allegations that are merely

13   conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

14   State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general

15   allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l

16   Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957),

17   overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is

18   whether there is any set of "facts that could be proved consistent with the allegations of the

19   complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S.

20   506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts

21   which [they have] not alleged, or that the defendants have violated...laws in ways that have not

22   been alleged." Associated General Contractors of California, Inc. v. California State Council of

23   Carpenters, 459 U.S. 519, 526 (1983).

24         In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited

25   to reviewing only the complaint.  "There are, however, two exceptions....First, a court may

26   consider material which is properly submitted as part of the complaint on a motion to dismiss...If

27   the documents are not physically attached to the complaint, they may be considered if the

28   documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.

3

1    Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record."

2    Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.  The Ninth

3    Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which

4    permits us to take into account documents whose contents are alleged in a complaint and whose

5    authenticity no party questions, but which are not physically attached to the plaintiff's pleading."

6    Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court may not

7    look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition

8    to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be

9    considered by the court in determining whether to grant leave to amend or to dismiss the

10   complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003),

11   citations omitted.

12          If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without

13   prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend

14   even if no request to amend the pleading was made, unless it determines that the pleading could

15   not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th

16   Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other

17   words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX,

18   Inc., 298 F.3d 893, 898 (9th Cir. 2002).

19

20                                   **III. Discussion**

21          As an initial matter, Plaintiff was granted leave to amend in order to conform the case to

22   the evidence.  In explaining why amendment was necessary, the court said that "Plaintiff's

23   allegations could be considered new theories for relief under existing causes of action or they

24   could be considered evidence in support of the existing causes of action." Doc. 99, November 29,

25   2010 Order, at 3:8-9.  Defendant had objected to consideration of the new facts and requested in

26   the alternative "that these facts alluded to by Plaintiff be reflected in an amendment to the

27   Complaint...to allow Wal-Mart to conduct discovery on the additional allegations." Doc. 91,

28   Summary Judgment Reply, at 10:6-8.  The court had not contemplated Plaintiff adding additional

                                            **4**

1  causes of action.  However, as Defendant has acquiesced to the amendment (as evidenced by not

2  seeking dismissal of the fourth, eighth, and eleventh causes of action), the court will deal with

3  the TAC as is.  For the causes of action that Plaintiff fails to adequately plead, no leave to amend

4  is granted.  Plaintiff has already been given three opportunities to amend his complaint and

5  further amendment would constitute undue delay at this late stage of the proceedings. See

6  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010) ("the district court may

7  exercise its discretion to deny leave to amend due to undue delay, bad faith or dilatory motive on

8  part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

9  undue prejudice to the opposing party, and futility of amendment), citations and quotations

10  omitted.

11

12  **A. Joinder of Cox as a Defendant**

13  Cox is an Assistant Manager at the Wal-Mart store Plaintiff works at.  Both Plaintiff and

14  Cox are citizens of California.  This case is before the court on diversity jurisdiction.  "If after

15  removal the plaintiff seeks to join additional defendants whose joinder would destroy subject

16  matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the

17  State court." 28 U.S.C. §1447(e).  Plaintiffs may not circumvent 28 U.S.C. §1447(e) by relying

18  on Fed. Rule Civ. Proc. 15(a) to join non-diverse parties. See Clinco v. Roberts, 41 F. Supp. 2d

19  1080, 1086 (C.D. Cal. 1999).  "There are a variety of factors courts have considered while

20  exercising their discretion under § 1447(e), including: (1) whether the party sought to be joined is

21  needed for just adjudication and would be joined under Fed. Rule Civ. Proc. 19(a); (2) whether

22  the statute of limitations would prevent the filing of a new action against the new defendant

23  should the court deny joinder; (3) whether there has been unexplained delay in seeking the

24  joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; and (5)

25  whether the claim against the new party seems valid. Other factors...include; (6) the possible

26  prejudice that may result to any of the parties in the litigation; (7) the closeness of the

27  relationship between the new and the old parties; (8) the effect of an amendment on the court's

28  jurisdiction; and (9) the new party's notice of the pending action." Oum v. Rite Aid Corp., 2009

U.S. Dist. LEXIS 5959, *3 (C.D. Cal. Jan. 20, 2009), citations omitted.

In this case, Cox should not be considered a necessary party under Fed. Rule Civ. Proc. 19. Plaintiff alleges Cox violated FEHA by harassing him. Plaintiff makes only sparse factual allegations against Cox, consisting of: failure to provide Plaintiff training, wrongfully changing Plaintiff's work schedule, and refusing to deal with Plaintiff's complaints. See Doc. 100, TAC, at 14:1-14. All of Plaintiff's factual allegations against Cox is prefaced by reference to "Wal-Mart/Cox." This indicates that all of Plaintiff's claims are, at base, against Defendant; Cox is just Defendant's agent. From the allegations of the TAC, it does not appear that Cox is the primary employee at Wal-Mart that is allegedly harassing Plaintiff or that his allegedly harassing actions are more severe. Whether Cox's actions are central to Plaintiff's claims against Defendant is significant. See Chan v. Bucephalus Alternative Energy Group, LCC, 2009 U.S. Dist. LEXIS 39362 (N.D. Cal. Apr. 24, 2009) ("Kim's conduct is the primary basis for each of Plaintiff's causes of action"). "Courts disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief." IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008, 1012 (N.D. Cal. 2000). While Cox can not be said to be tangentially related, there is no danger that Plaintiff would receive incomplete relief if he is only permitted to pursue his claim against Defendant. Plaintiff's allegations against Cox can all be charged against Defendant and there is no fear that Defendant would be unable to satisfy a money judgment. Plaintiff would not suffer any prejudice if Cox is not a named defendant; Cox is still available as a witness subject to subpoena under Fed. Rule Civ. Proc. 45. Further, there is a concern that Plaintiff seeks to join Cox in order to defeat federal subject matter jurisdiction. It does not appear from the TAC that he treated Plaintiff any worse than other Wal-Mart employees and naming him as a defendant is a rather random move.

**B. FEHA Exhaustion**

Defendants challenges all claims arising from allegations that post date the April 6, 2010 FEHA charge, arguing that Plaintiff has not administratively exhausted them. Plaintiff has

1    provided a letter from the Department of Fair Employment and Housing ("DFEH") which

2    indicates that Plaintiff filed a charge with the DFEH through the online right-to-sue system on

3    November 12, 2010. Doc. 106, Part 1, January 12, 2011 Letter.  The DFEH admits that its

4    computer system malfunctioned, losing the record and preventing printout of a right-to-sue

5    notice.  Plaintiff then filed additional charges with the DFEH on January 16 and 17, 2011; he

6    received right to sue notices for those charges. See Doc. 106, Part 1, at 6, 10, and 14.  The TAC

7    was filed on December 10, 2010.  "Defendant argues "Plaintiff should not be allowed to rectify

8    his fundamental failure to exhaust his administrative remedies prior to filing his Complaint by

9    simply filing three late administrative charges." Doc. 111, Brief, at 9:8-10.  As a practical matter

10   however, the court accepts that Plaintiff has cured any defect in subject matter jurisdiction.  Even

11   if subject matter jurisdiction was lacking at the time the TAC was filed, it exists now; the case

12   has ripened.  If the court were to find that Plaintiff lacked subject matter jurisdiction, there would

13   be nothing to bar Plaintiff from filing a new suit against Defendant based upon the January

14   charges with the DFEH.  Accepting the TAC as is serves to expedite resolution of this case.  This

15   result is just as the DFEH has admitted that its computer systems was the cause of the procedural

16   hiccup.

17

18   **C. Access To Disabled Parking (Second and Third Causes of Action)**

19          Defendant seeks dismissal of claims under both Cal. Bus. & Prof. Code §17200 and Cal.

20   Civ. Code §51.  Plaintiff alleges in part, "Wal-Mart is engaged in an unlawful business practice

21   by: 1) Refusing all disabled employees from parking in the TLC disabled parking spot." Doc.

22   100, TAC, at 21:8-10.  The UCL defines unfair competition as 'any unlawful, unfair or

23   fraudulent business act or practice.' Therefore, under the statute there are three varieties of unfair

24   competition: practices which are unlawful, unfair or fraudulent." In re Tobacco II Cases, 46 Cal.

25   4th 298, 311 (Cal. 2009), citations and quotations omitted.  Plaintiff is proceeding under the

26   "unlawful" prong which "includes anything that can properly be called a business practice and

27   that at the same time is forbidden by law...in essence, an action based on Business and

28   Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of

1    other laws and treats these violations, when committed pursuant to business activity, as unlawful

2    practices independently actionable under section 17200 et seq. and subject to the distinct

3    remedies provided thereunder." <u>Farmers Ins. Exchange v. Superior Court</u>, 2 Cal. 4th 377, 383

4    (Cal. 1992), citations and quotations omitted.  In this way, the Cal. Bus. & Prof. Code §17200

5    claim borrows from the Cal. Civ. Code §51 claim.

6         Regarding Cal. Bus. & Prof. Code §17200, Defendant argues "plaintiff's recovery is

7    limited to claims that accrued between March 20, 2004 and the March 20, 2008 filing of

8    plaintiff's lawsuit. However, nowhere in the Complaint does plaintiff allege any date for said

9    denial of access [to the disabled parking spots] outside of his employee status, and therefore does

10   not plead sufficient facts to meet the four-year statut of limitations for this claim." Doc. 111,

11   Brief, at 14:12-16.  Regarding Cal. Civ. Code §51, Defendant argues "In order to properly plead

12   Unruh, Plaintiff must set forth the date on which the allegedly discriminatory conduct occurred,

13   i.e., denial of the right to park in the disables parking spots, when he was acting solely as a

14   customer on non-work days. Plaintiff has failed to allege when, if ever, the discriminatory

15   conduct occurred." Doc. 111, Brief, at 15:15-19, quotations omitted.  But in fact, Plaintiff alleges

16   "Alvarado tells Zane that if he parks in the disabled parking in the TLE area, that he will be fired,

17   and as a result of this threat, Zane stops parking there, both on workdays and on days when he is

18   there as a customer....Zane buckles under the directive, and on or about 5/10/07, 5/11/07 and

19   5/12/07, he does not park in the TLE disabled parking space, and as a Wal-Mart customer during

20   around timeframe he [did] not park in the TLE disabled parking spot." Doc. 100, TAC, at 13:23-

21   27 and 11:5-8.  Plaintiff's allegations are sufficient to address the concerns raised by Defendant.

22

23   **D. Breach of Contract (Fifth Cause of Action)**

24        Plaintiff alleges "Store Manager Gillam and Zane verbally confirm in March 2006, and

25   document in writing, that Zane will work at least 28-hours per week, and work Wednesday

26   through Saturday 7 a.m. to 4 p.m. (Exhibit 10) to keep his full-time status and insurance

27   benefits." Doc. 100, TAC, at 9:6-9.  Exhibit 10 is a form from March 2006 which reflects

28   Plaintiff's availability to work on different days.  While it does show that Plaintiff was available

1 Wednesday through Saturday, 7 to 4, the form includes the language "This form is no guarantee

2 of a shift or minimum number of hours." Doc. 101, Part 1, Ex. 10, page 2 of 20.  Defendant

3 argues that Plaintiff fails to plead the existence of a contract and the existence of consideration.

4 Plaintiff may not be able to rely on Exhibit 10 to show a written contract, but he does state that

5 "Wal-Mart and Zane entered into a verbal contract whereby they agreed to provide him certain

6 hours, schedule and benefits, and in return he agreed to provide his employment services." Doc.

7 100, TAC, at 22:17-20.  Consideration is self evident: Plaintiff's pay and insurance benefits.

8 Plaintiff's allegations are sufficient to address the concerns raised by Defendant.

9

10 **E. Promissory Estoppel (Sixth Cause of Action)**

11       Plaintiff alleges "Wal-Mart promised and represented to [Zane] that it would provide him

12 certain hours, schedule and benefits, and in reliance thereon Zane continued to work at Wal-

13 Mart." Doc. 100, TAC, at 23:1-2.  "The elements of promissory estoppel are: (1) a clear promise,

14 (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation

15 assumed and not performed." Poway Royal Mobilehome Owners Assn. v. City of Poway, 149

16 Cal. App. 4th 1460, 1471 (Cal. App. 4th Dist. 2007), citations omitted.  Defendant argues

17 "Plaintiff fails to plead facts that he was injured by his reliance on Wal-Mart's promise for set

18 hours and a full-time position." Doc. 111, Brief, at 17:8-11.  Again, the injury is manifest:

19 Plaintiff's lost pay and benefits.  Plaintiff's allegations are sufficient to address the concerns

20 raised by Defendant.

21       "[T]he doctrine of promissory estoppel is used to provide a substitute for the

22 consideration which ordinarily is required to create an enforceable promise." Raedeke v.

23 Gibraltar Sav. & Loan Assn., 10 Cal. 3d 665, 672-673 (Cal. 1974).  The California Supreme

24 Court has gone so far as to approve of dismissing (through demurrer) a promissory estoppel

25 cause of action when the plaintiff plead the elements of a breach of contract in a wage dispute.

26 Youngman v. Nevada Irrigation Dist., 70 Cal. 2d 240, 250 (Cal. 1969), quoting Healy v.

27 Brewster, 59 Cal.2d 455, 463 (Cal. 1963) ("where the promisee's reliance was bargained for, the

28 law of consideration applies; and it is only where the reliance was unbargained for that there is

1    room for application of the doctrine of promissory estoppel").  At this point, the court will treat

2    promissory estoppel as a cause of action in the alternative.

3

4    **F. Promise Without Intention of Performing  and Negligent Misrepresentation (Seventh**

5    **Cause of Action)**

6             Plaintiff alleges that in 2004, "Manager Wallis and Zane enter into a verbal agreement:

7    His 'set' hours are 7 a.m. to 4 p.m. Wednesday through Saturday. Zane can take off January,

8    February and September for a leave of absence. His 28-hour workweek qualifies Zane for full

9    time status. Manager Wallis says 'This will be Zane's set schedule.' The agreement is followed.

10   From 2004 to 2009 Zane takes his 3-months of leave absence....In October 2009 Mr. Victor

11   Ramirez becomes the new Store Manager. In violation of Zane's Agreement with Wal-Mart, he

12   cuts Zane's hours to less than 28 per week." Doc. 100, TAC, at 5:23-6:1 and 13:12-15.  Based on

13   these factual allegations, Plaintiff charges that "Manager Wallis intentionally and/or recklessly

14   promised and represented to Zane that he could take off January, February and September for a

15   leave of absence; a 28-hour workweek qualifies Zane for full time status, and that his set hours

16   are 7 a.m. to 4 p.m. Wednesday through Saturday." Doc. 100, TAC, at 23:9-13.  Plaintiff also

17   charges in the alternative, "Manager Wallis negligently promised and represented to Zane that he

18   could take off January, February and September for a leave of absence; a 28-hour workweek

19   qualifies Zane for full time status, and that his set hours are 7 a.m. to 4 p.m. Wednesday through

20   Saturday." Doc. 100, TAC, at 23:20-24.  The two claims are, in essence, promissory fraud and

21   negligent misrepresentation.

22            "An action for promissory fraud may lie where a defendant fraudulently induces the

23   plaintiff to enter into a contract. The elements of fraud that will give rise to a tort action for

24   deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b)

25   knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable

26   reliance; and (e) resulting damage." Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951,

27   974 (Cal. 1997), citations omitted.  A claim for promissory fraud must meet the heightened Fed.

28   Rule Civ. Proc. 9(b) pleading standard. See Hands on Video Relay Servs. v. Am. Sign Language

<u>Servs. Corp.</u>, 2009 U.S. Dist. LEXIS 124899, *31-33 (E.D. Cal. Aug. 12, 2009). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. Rule Civ. Proc. 9(b). A complaint alleging fraud meets the standard if it alleges the time, place, and content of the fraudulent statements, including reasons why the statements are false. <u>Decker v. GlenFed, Inc.</u>, 42 F.3d 1541, 1547-48 (9th Cir. 1994). Defendant argues Plaintiff "does not plead, for example, that his agreement to take leaves of absence or work a certain number of hours and only on certain days would last indefinitely or be immune from business necessity." Doc. 111, Brief, at 18:11-13. It appears from Plaintiff's allegations that the promises Wallis made were kept for approximately five years. Plaintiff has not alleged what the duration of those promises were. Given the strict pleading standards for fraud, the court can not assume that Wallis promised Plaintiff would keep those hours and months of leave forever. Plaintiff has not stated a claim for promissory fraud.

"[T]he elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." <u>Lincoln Alameda Creek v. Cooper Indus.</u>, 829 F. Supp. 325, 330 (N.D. Cal. 1992), citing <u>Fox v. Pollack</u>, 181 Cal. App. 3d 954, 962 (Cal. App. 1st Dist. 1986). Defendant argues Plaintiff has failed to plead that Wallis had no reasonable ground for believing the truth of his statement and justifiable reliance. Doc. 111, Brief, at 19:10-18. From the pleadings, Plaintiff does not explain what circumstances made it unreasonable in 2004 for Wallis to believe he could offer Plaintiff three months leave and 28 hour workweeks. Plaintiff identifies him as overall manager of the store. Plaintiff has not stated a claim for negligent misrepresentation.

**G. Assault (Ninth Cause of Action)**

Plaintiff alleges "Assistant Manager Robbie Alvarado ('Alvarado') tells Zane to take off his cap, and after Zane asks for the rulebook, he flips Zane off, and threatens him: **he said he**

**was going to get him**....Wal-Mart's employee, Robbie Alvarado, intentionally and voluntarily made threatening words to Zane, and made the physical action of 'flipping Zane off,' suggesting that he intended to inflict immediate harmful offensive touching, and/or bodily injury." Doc. 100, TAC, at 12:18-21 and 24:12-15, emphasis in original.  "The elements of civil assault are: demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. The tort of assault is complete when the anticipation of harm occurs. Mere words, however threatening, will not amount to an assault." <u>Martinez v. Garza</u>, 2011 U.S. Dist. LEXIS 324, *60 (E.D. Cal. Jan. 3, 2011), citations omitted.

Defendant argues that the allegations do not support a finding that Plaintiff was in immediate apprehension of harm.  Alvarado's words are reasonably interpreted as a threat, but there is no indication that he was going to attack Plaintiff at that point.  Alvarado's flipping Plaintiff off is not enough to suggest an immediate threat. Cf. <u>In re Felix G.</u>, 2007 Cal. App. Unpub. LEXIS 6830, *6-7 (Cal. App. 2nd Dist. Aug. 23, 2007)[2] (discussing "flipping off" in conjunction with threats of violence in the context of witness intimidation, but not in context of assault).  Future harm is insufficient for civil assault. See <u>Martinez v. Garza</u>, 2011 U.S. Dist. LEXIS 324, *61 (E.D. Cal. Jan. 3, 2011), citing <u>Steel v. City of San Diego</u>, 726 F. Supp. 2d 1172, 1190 (S.D. Cal. 2010) ("Martinez alleges in the complaint that Defendant Vargas assaulted him by making a death threat against him based on her statement that he would be in a grave by her. There are no facts presented to indicate that Defendant Vargas was about to inflict immediate injury on Martinez when she issued the threat. Thus, her statement is akin to a threat of future action, which cannot serve as the basis of an assault cause of action").  Plaintiff has not stated a claim for civil assault.

---

[2]Federal court "may consider unpublished state decisions, even though such opinions have no precedential value." <u>Emplrs Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003), citing <u>Nunez v. City of San Diego</u>, 114 F.3d 935, 943 n.4 (9th Cir. 1997).

**H. Negligent Infliction of Emotional Distress (Tenth Cause of Action)**

Defendant argues that negligent infliction of emotional distress "is not a separate or independent cause of action under California law" and so any claim so titled must be dismissed. Doc. 111, Brief, at 22:13-14.  Defendant relies on an opinion which states "At the outset we must remind ourselves that, however handy the acronym, as our Supreme Court has made abundantly clear, there is no such thing as the independent tort of negligent infliction of emotional distress." Lawson v. Management Activities, 69 Cal. App. 4th 652, 656 (Cal. App. 4th Dist. 1999).  The very quote contains the acknowledgment that the California Supreme Court does in fact recognize some sort of negligent infliction of emotional distress claim. See e.g., Taus v. Loftus, 40 Cal. 4th 683, 705 (Cal. 2007); John B. v. Superior Court, 38 Cal. 4th 1177, 1206 (Cal. 2006). Defendant pointedly does not proffer the Lawson court's statement that "it is more in keeping with the fact that NIED is not a separate doctrine to ask: What are the circumstances under which a plaintiff can recover damages for emotional distress as a matter of the law of negligence? It is true that the question, however phrased and whatever its permutations, requires more words than just 'NIED,' and therefore is more cumbersome to write. But at least the asking of it reminds us what we are dealing with." Lawson v. Management Activities, 69 Cal. 4th 652, 657 (Cal. App. 4th Dist. 1999).  Thus, it is shown that Lawson objects only to the term negligent infliction of emotional distress and not to the fact that plaintiff can recover for emotional distress as part of a claim of negligence.  Defendant cites to jury instruction CACI 1620 which includes the comment that "The California Supreme Court has allowed plaintiffs to bring negligent infliction of emotional distress actions as 'direct victims' in only three types of factual situations:....(3) the negligent breach of a duty arising out of a preexisting relationship."  Defendant does not address why the allegations fail to satisfy the substantive elements of negligence, and the court declines to do so sua sponte.  Plaintiff's allegations are sufficient to address the concerns raised by Defendant.


**I. Breach of Third Party Beneficiary Contract (Twelfth Cause of Action)**

Plaintiff alleges "193. Ruth was a third-party beneficiary of the contract between Zane

1   and Wal-Mart referenced above. 194. Pursuant to the contract, Ruth was entitled to, and did

2   receive health insurance coverage. 195. Wal-Mart breached the contract by eliminating her

3   insurance coverage." Doc. 100, TAC, at 25:15-20.  Defendant argues Ruth Hardin does not

4   qualify as a third party beneficiary since the contract was not made to expressly benefit her.  "To

5   recover as a third-party beneficiary, therefore, one must show that the contract in question was

6   made expressly for his benefit. It has been held that 'expressly' means in an express manner; in

7   direct or unmistakable terms; explicitly; definitely; directly. While it is not necessary that the

8   third party be specifically named as a beneficiary ...an intent to make the obligation inure to the

9   benefit of the third party must have been clearly manifested by the contracting parties." R. J.

10  Cardinal Co. v. Ritchie, 218 Cal. App. 2d 124, 135-36 (Cal. App. 1st Dist. 1963), citations and

11  quotations omitted.

12        Courts have accepted that spouses of employees who receive insurance benefits through

13  their workplace qualify as third party beneficiaries for suing the insurance carrier. See

14  McLaughlin v. Connecticut Gen. Life Ins. Co., 565 F. Supp. 434, 453 (N.D. Cal. 1983) (health

15  insurance); see also Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751, 761 (9th Cir. 2001)

16  (dissent) (in ERISA case, pointing out that analogous state law recognizes right of life insurance

17  beneficiaries to sue insurance company).  However, the third party benefit doctrine does not

18  extend to suing the employer unless the insurance benefits were expressly part of the

19  employment contract.  In dismissing breach of contract and breach of the duty of good faith and

20  fair dealing claims brought by the spouse of an employee for denial of health insurance benefits,

21  the Northern District concluded:

22        [U]nder a third-party beneficiary theory, in order to ascertain whether a defendant will be
          held liable to a third person not in privity, a court must balance several factors: the extent
23        to which the transaction was intended to affect the plaintiff; the foreseeability of harm to
          the plaintiff; the degree of certainty that the plaintiff suffered injury; the nexus between
24        the defendant's conduct and the injury; and the policy of preventing future harm. Biakanja
          v. Irving, 49 Cal. 2d 647, 650 (1958).
25
          Applying these factors to the case at bar, it is doubtful that Juan's termination was
26        intended to affect Lisa. Although the disruption to Lisa's life may have been foreseeable
          and her injury real, the actions of Home Federal added nothing to the expectation she
27        might thereby suffer some injury. No duty can arise in the absence of some word or deed
          making a nonemployee spouse a direct victim of the employer's [alleged] tortious
28        conduct.' Anderson v. Northrop Corp., 203 Cal. App. 3d 772, 780 (1988) (citation

                                          **14**

omitted). The connection between Home Federal's conduct and Lisa's injury is attenuated because she was not an employee. Finally, the California legislature has not articulated a policy as to the rights of a nonemployee spouse to sue her spouse's former employer. Thus, the court will not usurp the lawmaking body's function by setting forth such a policy.

California v. Home Federal Sav. & Loan Ass'n, 1989 U.S. Dist. LEXIS 15947 (N.D. Cal. Dec. 6, 1989).  In the absence of some indication that the spouse's benefits were specifically part of the contract, the courts will not allow spouses to sue employers under a third party beneficiary theory as the default law.  Again, the Plaintiff's allegations regarding the contract reads "Store Manager Gillam and Zane verbally confirm in March 2006, and document in writing, that Zane will work at least 28-hours per week, and work Wednesday through Saturday 7 a.m. to 4 p.m. (Exhibit 10) to keep his full time status and insurance benefits." Doc. 100, TAC, at 9:6-9.  Plaintiff does not state that Ruth Hardin's insurance benefits were ever discussed.  In opposition, Plaintiff only says "The intent to benefit Plaintiff Ruth Hardin arises from the very fact that she did receive health insurance benefits from Zane's full-time status contract. If Wal-Mart did not intend her to get these benefits, she never would have gotten any of them at any time! Of course, there was an intent to benefit her." Doc. 117, Opposition, at 10:23-27.  Ruth Hardin has not stated a claim for breach of third party beneficiary contract.

**J. Elder Abuse (Fourteenth Cause of Action)**

Plaintiff claims violations of California's Elder Abuse Dependent Adult Civil Protection Act based on allegations that "Wal-Mart has taken and appropriated Plaintiffs' property rights in the wages and benefits, including insurance coverage for Ruth, that would continue to exist and/or accrue, if Wal-Mart honored the employment agreement reached with Zane....Wal-Mart has engaged in such conduct, by violating the law in directing Zane (including Alvarado threatened to fire him) to not park in the disabled parking spot in the TLE area, hunt around for his stool, and endure threats of physical harm, and repeated acts of harassment, retaliation and discrimination, designed to inflict mental suffering, and cause Zane to quit Wal-Mart." Doc 100, TAC, at 26:24-27:7.  Broadly, Plaintiff charges financial abuse, physical abuse, and neglect.

Cal. Welf. & Inst. Code §15610.30 states in relevant part "(a) 'Financial abuse' of an

elder or dependent adult occurs when a person or entity does any of the following: (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both. (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both."  Plaintiff is claiming that the loss of wages and insurance benefits qualifies.  As Defendant points out, Plaintiff is not alleging that he was not paid for hours worked, but rather wages he would have earned if he had more hours.  Cal. Welf. & Inst. Code §15610.30 references "real or personal property."  Under general California law, "The words 'real property' are coextensive with lands, tenements, and hereditaments" and "The words 'personal property' include money, goods, chattels, things in action, and evidences of debt." Cal. Civ. Code §14.  Plaintiff's allegations do not qualify as either.  There does not appear to be any case law that discusses lost future wages as constituting financial abuse under Cal. Welf. & Inst. Code §15610.30.

Cal. Welf. & Inst. Code §15610.63 states in relevant part "'Physical abuse' means any of the following: (a) Assault, as defined in Section 240 of the Penal Code....(f) Use of a physical or chemical restraint."  Plaintiff claims that denial of disabled parking, the taking of the stool, and Alvarado's threats constitute physical abuse.  Defendant argues that "physical abuse is 'unreasonable physical constraint.' Wal-Mart has unreasonably constrained Zane from parking in the TLC parking spots." Doc. 117, Opposition, at 11:6-9.  The physical restraints under the elder abuse law are actions which actually prevent the elderly from moving freely, like locking them in. See Intrieri v. Superior Court, 117 Cal. App. 4th 72, 78 (Cal. App. 6th Dist. 2004).  Plaintiff's complaints concerning parking and the stool do not rise to the level of seriousness which constitutes physical constraint.  As for Alvarado's threats, under Cal. Penal Code §240, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Flipping Plaintiff off and saying he would get him do not qualify as an attempt to commit violent injury.

Cal. Welf. & Inst. Code §15610.57 states in relevant part "(a) 'Neglect' means either of the following: (1) The negligent failure of any person having the care or custody of an elder or a

1   dependent adult to exercise that degree of care that a reasonable person in a like position would

2   exercise. (2) The negligent failure of an elder or dependent adult to exercise that degree of self

3   care that a reasonable person in a like position would exercise. (b) Neglect includes, but is not

4   limited to, all of the following:...(3) Failure to protect from health and safety hazards."  Plaintiff

5   argues "Wal-Mart engaged in 'Neglect' by failing to protect Zane from health and safety

6   hazards.....Wal-Mart has stolen Zane's chair, forced [him] to walk farther to the store, (and thus

7   increase the risk of injury), and allowed its employees to mentally harass, torment, and abuse

8   Zane." Doc. 117, Opposition, at 12:1-6.  Defendant points out that Plaintiff has not explained

9   how he was in the care or custody of Defendant.

10          Plaintiff has not stated a claim for elder abuse.

11

12   **K. Amendment to Third Amended Complaint**

13          A few days after filing the TAC, Plaintiff filed an amendment to the TAC, seeking to add

14   a fifteenth cause of action. Doc. 103.  If an amended pleading can not be made as of right and is

15   filed without leave of court or consent of the opposing party, the amended pleading is a nullity

16   and without legal effect. United States ex rel. Mathews v. HealthSouth Corp., 332 F.3d 293, 296

17   (5th Cir. 2003).  Plaintiff was granted leave by the court to file a third amended complaint, but

18   not a fourth amended complaint.  Plaintiff did not obtain consent from Defendant.  The court will

19   not consider the additional amendment.  The improper pleading is stricken.

20

21   **L. Motion to Strike**

22          Defendant has provided a long list of passages from the TAC that it generally argues

23   should be stricken for being scandalous, redundant, immaterial, and/or impertinent. See Doc.

24   111, Brief, at 29:1-35:22.  "A motion to strike pursuant to Rule 12(f) should be denied unless it

25   can be shown that no evidence in support of the allegation would be admissible. The question of

26   relevancy and admissibility usually should not be determined solely on the pleadings." Pease &

27   Curren Refining, Inc. v. Spectrolab, Inc., 744 F. Supp. 945, 947 (C.D. Cal. 1990), citations and

28   quotations omitted.  "If there is any doubt as to whether the allegations might be an issue in the

actions, courts will deny the motion." In re 2TheMart.com, Inc., 114 F.Supp. 2d 955, 965

(C.D.Cal. 2000).  "Motions to strike are disfavored and infrequently granted." NRDC v.

Kempthorne, 539 F. Supp. 2d 1155, 1162 (E.D. Cal. 2008).  "[M]otions to strike should not be

granted unless it can be shown that no evidence in support of the allegation would be admissible,

or those issues could have no possible bearing on the issues in the litigation." Gay-Straight

Alliance Network v. Visalia Unified School Dist., 262 F.Supp.2d 1088, 1099 (E.D. Cal. 2001).

The court can not categorically state that the numerous passages Defendant has cited will not be

relevant in this case.  For example, Defendant seeks to strike Plaintiff's allegation that "Wal-

Mart Corporate Management has issued to Store Managers written and verbal directives and

financial incentives to convert workers to part-time status, and thereby reduce health insurance

costs, and to dissuade and encourage less healthy workers, like the aged and disabled from

working at Wal-Mart." Doc. 100, TAC, at 8:23-9:1.  The allegation is potentially relevant

regarding causation of any adverse employment action.  In an abundance of caution, the court

declines to strike the allegations.

### IV. Order

Defendant's motion to dismiss is GRANTED in part and DENIED in part.  Defendant's

motion to strike is DENIED.  The improper pleadings (Doc. 103) is STRICKEN.

All claims against Defendant Gregory Cox are DISMISSED.  All claims by Ruth Hardin

are DISMISSED.  Plaintiff's seventh (promise without intention of performing and negligent

misrepresentation), ninth (assault), twelfth (breach of third party beneficiary contract), and

fourteenth (elder abuse) causes of action are DISMISSED.  Plaintiff is not granted leave to

amend.

IT IS SO ORDERED.

Dated:    April 22, 2011    _____

CHIEF UNITED STATES DISTRICT JUDGE