UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **ZANE HARDIN,** | ) | CIV-F-08-0617 AWI BAM |
| Plaintiff, | )<br>)<br>) | **ORDER RE: PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| v. | ) | |
| **WAL-MART STORES, INC.; and DOES 1-100,** | )<br>)<br>) | |
| Defendants. | )<br>) | |

**I. History**

Plaintiff Zane Hardin ("Plaintiff") has been an employee of Defendant Wal-Mart ("Defendant") for several years. Broadly, Plaintiff alleges that Defendant discriminated against and harassed him on the basis of age and physical disability, and then retaliated against him when he asserted his rights.

Plaintiff originally filed this case in state court on March 20, 2008; it was removed to federal court on diversity jurisdiction. The active complaint is the third amended complaint, which includes fourteen causes of action. They are: employment discrimination, retaliation, harassment, and denial of reasonable accommodation in violation of California's Fair Employment and Housing Act ("FEHA"); violation of California's Business & Professions Code §17200; violation of California Civil Code §51; intentional infliction of emotional distress; breach of contract; promissory estoppel; conversion; negligent infliction of emotional distress;

1

wrongful demotion; and defamation. Defendant made a motion for summary judgment, which Plaintiff opposed. Summary judgment was granted in favor of Defendant. Doc. 204. Plaintiff has made a motion for reconsideration. Doc. 206. The motion was opposed and taken under submission without oral argument.

## II. Legal Standards

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." School Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), citations omitted.

## III. Discussion

Plaintiff does not appear to raise new evidence or change in the law. Instead, Plaintiff aruges that the court misinterpreted the evidence in the summary judgment order. The arguments are analyzed under clear error.

**A. Defamation**

Plaintiff argues that Defendant's statement constitutes libel per se. Doc. 207, Brief, 16:15-23. "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face." Cal. Civ. Code §45a. In the employment context, a statement must "injure plaintiffs' reputation with respect to their occupation....without the necessity of resorting to extrinsic material." Williams v. Daily Review, Inc., 236 Cal. App. 2d 405, 411 (Cal. App. 1st Dist. 1965), overruled on other grounds by Brown v. Kelly Broadcasting Co., 48 Cal. 3d 711, 732 n.18 (Cal. 1989). In general, "unless an employer's performance evaluation accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior it cannot support a cause of action for libel. This is true even when the employer's perceptions

about an employee's efforts, attitude, performance, potential or worth to the enterprise are objectively wrong and cannot be supported by reference to concrete, provable facts." Gould v. Maryland Sound Industries, Inc., 31 Cal. App. 4th 1137, 1153 (Cal. App. 2d Dist. 1995), quoting Jensen v. Hewlett-Packard Co., 14 Cal. App. 4th 958, 966 (Cal. App. 4th Dist. 1993). "[T]he court must first determine as a question of law whether the statement is reasonably susceptible of a defamatory interpretation; if the statement satisfies this requirement, it is for the jury to determine whether a defamatory meaning was in fact conveyed to the listener or reader." Kahn v. Bower, 232 Cal. App. 3d 1599, 1608 (Cal. App. 1st Dist. 1991). In California, showing that the statement constitutes libel per se such that the issue goes to a jury is a high standard to meet.

The substance of the "Coaching for Improvement" document is roughly reproduced as follows:

> Type of Coaching:
> The Level, Type, and Reason(s) displayed below were the original Level, Type, and Reason(s) selected for the coaching
>
> Level        Type           Reason(s)
> Verbal       Misconduct     Safety/Safe Work Practices
>
> Observations of Associates Behavior and/or Performance:
> On 10 20 04 Zane was working in the Furniture Department working up a pallet of freight. He lifted a box that weighed 100lbs. When lifting the box Zane twisted his back. Zane did not ask for anyone to help him with a team lift.
>
> Impact of Associate's Behavior:
> This injury has caused Zane to have a back injury causing him pain. This will also have a financial impact on the store Dr. bills. This affects other associates and their attitudes towards safety as it takes away from our safety incentives.
>
> Behavior Expected of Associate:
> Zane needs to ensure that when he is lifting heavy items he has an Associate help him with a Team lift.
>
> Next Level of Action:
> The next level of action if behavior continues is: Written up to and including Termination.
>
> Date, Time, and Place of Coaching:
> Date Given    2004-11-09    Time    11:05 AM    Place    Asst Mgrs Office
>
> Expiration Date:
> The expiration date of the coaching may be extended beyond 1 year if the Associate spent time on LOA.
> Expiration Date         2006-05-15    Original Expiration Date    2005-11-10

3

1  Doc. 190, Part 5, Ex. 7, Ex. A, (12 of 35).  There is no conceivable implication of criminal
2  conduct, dishonesty, or reprehensible personal characteristics in this report; these statements will
3  be analyzed to determine if this report constitutes a claim of incompetence.
4        Directly stating a person is incompetent constitutes libel per se. Care Plus Ins. Mktg. v.
5  Conn. Gen. Life Ins. Co., 2010 U.S. Dist. LEXIS 134892, *15 (E.D. Cal. Dec. 20, 2010) (alleged
6  assertion is "Plaintiffs were not paid as a result of Plaintiffs' incompetence, mismanagement and
7  dishonesty"); Greenly v. Sara Lee Corp., 2008 U.S. Dist. LEXIS 35472, *26-29 (E.D. Cal. Apr.
8  29, 2008) ("plaintiff had faked his workers' compensation claim [and] was incompetent as a
9  worker" ).  In dealing with statements that do not use the term "incompetent" or some variant
10  thereof, the assertion has to strongly suggest that the plaintiff is completely unsuited to the job.
11  Stating plaintiff was "an 'unreliable' employee who missed too much work" is insufficiently
12  strong to constitute libel per se. Jaramillo v. Food 4 Less Madera, 2010 U.S. Dist. LEXIS
13  120930, *24 (E.D. Cal. Nov. 16, 2010).  The two statements "lousy discounter" and "what's a
14  class guy like you doing working for a discounter like Penner?" did "not rise to the level of an
15  accusation that Penner is wholly incompetent in business. Accordingly, the slander per se claim
16  fails as a matter of law." Penner v. Breitling USA, 1996 U.S. Dist. LEXIS 4816, *14-15 (N.D.
17  Cal. Apr. 8, 1996), citations omitted.  A general statement of "poor performance...does not
18  suggest any lack of honesty, integrity or competency" in contrast to allegation plaintiff made a
19  $100,000 error in estimating a contract bid. Gould v. Maryland Sound Industries, Inc., 31 Cal.
20  App. 4th 1137, 1154 (Cal. App. 2d Dist. 1995).
21        In another case, the key allegedly defamatory statements were "On our March 11, 2005
22  conference call with Tom, he proudly mentioned that he 'procured' two RFPs for BlackRock.
23  When we asked him who the underlying clients were, he didn't know. His posture as having had
24  any role in RFPs sent to BlackRock was thus a bit puzzling" and "Tom also highlighted his
25  active participation in conversations with Paccar, while in reality, Paccar contacted a colleague
26  directly to begin discussions in which Tom was later included." Rudwall v. Blackrock, Inc., 2006
27  U.S. Dist. LEXIS 89801, *3-4 (N.D. Cal. Nov. 30, 2006).  The Ninth Circuit concluded that "At
28  most, the statements accuse Rudwall of exaggerating his role in various business matters."

**4**

Rudwall v. Blackrock, Inc., 289 Fed. Appx. 240, 242 (9th Cir. 2008). Even though there is the distinct suggestion of dishonesty, there is no real condemnation; the level of seriousness does not rise to that of libel per se. Similarly, statements to the effect that "Regalia demanded a finder's fee to which he was not entitled and that other employees would not work for Regalia and would leave if he remained employed by The Nethercutt Collection" do not constitute libel per se. Regalia v. The Nethercutt Collection, 172 Cal. App. 4th 361, 369 (Cal. App. 2d Dist. 2009). There is disapproval of plaintiff's work actions, but no statement that the plaintiff is hopeless or completely unsuited to the job. The district court recognized "California's special treatment of employee evaluations....California law makes it clear that, except in egregious circumstances not present here, the courts are not the proper venue for an employee to challenge his employment evaluation." Rudwall v. Blackrock, Inc., 2006 U.S. Dist. LEXIS 89801, *12-13 (N.D. Cal. Nov. 30, 2006). Plaintiff's situation is similar to those described above. Defendant's report states that Plaintiff should have asked for help in lifting a heavy item. There is the suggestion that Plaintiff should have used better judgment. The statement is mild and lacks any sense of opprobrium.

Assertions of incompetence sufficiently strong to constitute libel per se tend to be much harsher. The California Supreme Court dealt with a case in which a plaintiff made public statements defending his conservatorship, especially his inaction with respect to old bonds; the defendant countered that "he had 'fired' plaintiff, that plaintiff had been 'completely repudiated in the past' and was 'getting into this to justify his not doing anything about the bonds when he was in charge of them,' that an investigation should be made to find out why the bonds were 'left gathering dust in a safe deposit box,' and that defendant wanted the 'Justice Department' to look into the matter and 'in particular, to [plaintiff's] conduct in office,'" which the court found did constitute libel per se as they charged plaintiff with incompetence. Saroyan v. Burkett, 57 Cal. 2d 706, 708 (Cal. 1962). In another case, statements regarding a nurse, "that she was on drugs, practicing medicine as if she were a physician; and that the narcotics cart was always off-count whenever Ms. Armstrong was working" do constitute libel per se. Armstrong v. Wright-Pearson, 2011 U.S. Dist. LEXIS 128158, *17 (E.D. Cal. Nov. 3, 2011).

The court also notes that it appears the "Coaching for Improvement" document may be

5

privileged under Cal. Civ. Code §47(c). See <u>Rudwall v. Blackrock, Inc.</u>, 2006 U.S. Dist. LEXIS 89801, *8-9 (N.D. Cal. Nov. 30, 2006) (regarding internal performance reviews, "Section 47(c) also applies to communications within a company concerning the job performance of a current employer"); <u>Kelly v. General Telephone Co.</u>, 136 Cal. App. 3d 278, 285 (Cal. App. 2d Dist. 1982) (dealing with former Cal. Civ. Code §47(3), "Communication among a company's employees that is designed to insure honest and accurate records involves such a common interest" sufficient to be privileged). In general, California courts "express our strong judicial disfavor for libel suits based on communications in employment performance reviews....In light of the multitude of laws designed to protect the employee from oppressive employment practices, evaluations serve the important business purpose of documenting the employer's hiring, promotion, discipline and firing practices." <u>Jensen v. Hewlett-Packard Co.</u>, 14 Cal. App. 4th 958, 964 (Cal. App. 4th Dist. 1993).

Reconsideration of the defamation claim is denied.

**B. Public Accommodations Law**

Plaintiff referred to California Vehicle Code Sections 22511.10, 22511.11, 22511.5, 22458, arguing "the statutes show a clear legislative intent to allow disabled persons to park in any disabled parking spots." Doc. 207, Brief, 19:28. Plaintiff asserts "Defendant violates California law when it controls which disabled parking spots its disabled employees park in." Doc. 207, Brief, 29:4-6. It is largely undisputed that Nash told Plaintiff he could not park in the TLE disabled spots in May 2007, forcing Plaintiff to park in the disabled spots by the front of the building for a few days.

Cal. Veh. Code §22507.8 states, "(a) It is unlawful for any person to park or leave standing any vehicle in a stall or space designated for disabled persons and disabled veterans pursuant to Section 22511.7 or 22511.8 of this code or Section 14679 of the Government Code, unless the vehicle displays either a special identification license plate issued pursuant to Section 5007 or a distinguishing placard issued pursuant to Section 22511.55 or 22511.59. (b) It is unlawful for any person to obstruct, block, or otherwise bar access to those parking stalls or

spaces except as provided in subdivision (a)." Cal. Veh. Code §22511.8(a) states, "A local authority, by ordinance or resolution, and a person in lawful possession of an offstreet parking facility may designate stalls or spaces in an offstreet parking facility owned or operated by the local authority or person for the exclusive use of a vehicle that displays either a special license plate issued pursuant to Section 5007 or a distinguishing placard issued pursuant to Section 22511.55 or 22511.59." The term "parking facility" is not defined under the California Vehicle Code. The Beverly Hills Municipal Code states, "'Vehicle parking facility' shall mean an off-street parking facility, where the primary use of the property is to accommodate the parking of motor vehicles by members of the public. A vehicle parking facility does not include an off-street parking facility that accommodates the parking of motor vehicles by the occupants, customers, clientele and employees of an on-site or adjacent structure where the primary use of that structure is for office, retail or hotel purposes." Plotkin v. Sajahtera, Inc., 106 Cal. App. 4th 953, 957- 58 (Cal. App. 2d Dist. 2003). Plaintiff has not cited to any Fresno code that defines the term such that it applies to Defendant's parking lot.

Even putting aside the question of whether forbidding Plaintiff from parking in the TLE disabled spot violates Cal. Veh. Code §22507.8, in none of the complaints has Plaintiff alleged a claim directly under the California Vehicle Code. See Docs. 2, 20, 39, and 100. Plaintiff does cite to Cal. Veh. Code §§22511.10, 22511.7, and 22511.8 in the operative third amended complaint as background. Doc. 100, TAC, 9:12-10:1 and 11:11-26. The court can find no reference in the California Vehicle Code which gives individuals standing to bring private suits to enforce its provisions.

Instead, Plaintiff sued under the Unruh Civil Rights Act, asserting "Zane has been denied the right to park in the disabled parking spots in violation of said statute [Cal. Civ. Code §51], when he was acting solely as a customer on non-work days." Doc. 100, TAC, 21:21-22. In the summary judgment order, the court found that there was no evidence to support the inference that Plaintiff actually was denied parking when he went to the store as a customer. Again, it is largely undisputed that Nash told Plaintiff not to park in the disables parking spots by the TLE entrance. Plaintiff states he "buckled under the directive, and on or about 5/10/07, 5/11/07 and 5/12/07, I

did not park in the TLE disabled parking space, and when I went to Wal-Mart as customer during this timeframe, I did not park in the TLE disabled parking spot." Doc. 90, Part 4, Ex. 6, September 6, 2010 Hardin Declaration, 5:17-20.  These events are explored more fully in the Plaintiff's deposition.  Nash approached Plaintiff on May 9, 2007, and told him he could not park in the TLE disabled spots. Doc. 185, Ex. E, January 26, 2010 Hardin Deposition, 269:5-7.  When Plaintiff went to work on May 10, 11, and 12, 2007, he parked in the disabled spots by the front of the store. Doc. 185, Ex. E, January 26, 2010 Hardin Deposition, 268:12-15.  On May 15, 2007, Plaintiff wrote a letter to Gillam describing his conversation with Nash and declaring that he was returning to parking in the TLE disabled spots. Doc. 190, Part 5, Ex. B, (13 of 35).  Plaintiff parked in the TLE disabled space when he was there as a customer "two to three weeks later" and was confronted by Nash. Doc. 185, Ex. E, January 26, 2010 Hardin Deposition, 269:21-270:6.  Plaintiff told Nash, "'I'm not even working today. I'm off work'....And I just went in the store." Doc. 185, Part 1, Ex. E, Jan. 26, 2010 Hardin Deposition, 241:11-13.  It is evident that Plaintiff was not prevented from parking where he chose on that occasion.

     While it is possible that Plaintiff could have gone to the store as a customer and was deterred from parking in the TLE disabled spots, the likelihood is vanishingly low.  Nash told Plaintiff not to park there on May 9th.  Plaintiff was at the store as an employee May 10th-12th.  By May 15th, he had resolved to return to parking in the TLE disabled spots.  That leaves May 13th and 14th.  Plaintiff states that he goes to the store solely as a customer on non-work days "a maximum of possibly six times" a year. Doc. 185, Ex. E, January 26, 2010 Deposition, 262:9-21.  One of those instances was two to three weeks later, at which time Plaintiff freely chose where to park.  Pointedly, the May 15, 2007 letter only says that he was forced to park by the front of the store May 10th-12th, which were his work days; there is no mention of Plaintiff parking out front on the 13th or 14th. Doc. 190, Part 5, Ex. B, (13 of 35).  There is not enough evidence to give rise to the inference that Plaintiff was ever denied a TLE disabled parking spot when he went to the store as a customer.

     Reconsideration of the Cal. Civ. Code §51 claim is denied.

**C. Breach of Contract**

Plaintiff alleges Defendant violated an agreement to let him work 28 hours per week, Wednesday through Saturday with January, February, and September months off. In briefing on the underlying summary judgment motion, Plaintiff ambiguously stated that "Wal-Mart computerized system destroyed the agreement....The agreement was not created on a Wal-Mart Customer Service Availability Service, with its disclaims of 'no guarantee.'" Doc. 192, Opposition,15:26-16:3. In moving for reconsideration, Plaintiff now states "the agreement was documented in writing." Doc. 207, Briefing, 30:15. Thus, the court treats this as a written contract and not an oral contract. Plaintiff does not provide any signed contract other than the Wal-Mart Customer Service Scheduling Availability form. Doc. 101, Part 1, Ex. 10. Plaintiff has not explained how the computer system prevented him from producing a copy of the agreement; he has not alleged that it was an electronic document with electronic signatures. Plaintiff alleges "Store Manager Gillam and Zane verbally confirm in March 2006, and document in writing, that Zane will work at least 28-hours per week, and work Wednesday through Saturday 7 a.m. to 4 p.m. (Exhibit 10) to keep his full-time status and insurance benefits." Doc. 100, TAC, at 9:6-9. Thus the court is forced to treat the signed document produced as the contract between Plaintiff and Defendant.

The availability form was signed by Plaintiff and Gillam on March 29, 2006. The form specifies that Plaintiff is available 7:00AM to 4:00PM on Wednesday through Saturday; Plaintiff requested a minimum of 28 hours per week and a maximum of 32 hours per week.[1] The form makes no mention of taking January, February, and September off and specifies "This form is no guarantee of a shift or minimum number of hours." Doc. 101, Part 1, Ex. 10. Nothing in this document guarantees Plaintiff a set number of hours. Defendant does not breach any contract by

---

[1] The court notes that 7:00AM to 4:00PM on Wednesday through Saturday works out to a 36 hour workweek. Plaintiff insists that 7:00AM to 4:00PM were his set hours. Yet, the parties agree that Plaintiff worked an average of 30 hours per week (during the months he worked) between 2006 and 2009. Doc. 193, Plaintiff's SUMP, 17:14-18:14. Thus, the actual hours worked did not completely correspond to 7:00AM to 4:00PM..

9

giving Plaintiff fewer hours than requested. Further, the contract contained no specified duration and could be terminated at will by either party.

As for promissory estoppel, Plaintiff can not claim reasonable reliance since the contract specifically did not guarantee Plaintiff's hours. Reconsideration of the breach of contract and promissory estoppel claims are denied.

**D. Intentional Infliction of Emotional Distress**

Plaintiff argues "intentionally hiding the stool of a disabled, old man, denying him his civil rights, making him pay for the stool, threats to fire, threats to harm, demoting, cutting hours, reducing insurance, making a defamatory workplace, failing to investigate his complaint, are collective acts that are not within the bounds of a civilized society." Doc. 207, Briefing, 31:21-27. Plaintiff emphasized that though $20 is a small amount of money for a stool, "Plaintiff also did not like having to pay for it." Doc. 207, Briefing, 32:5-9. As previously stated, "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Hughes v. Pair, 46 Cal. 4th 1035, 1051 (Cal. 2009), citations omitted.

Reconsideration of the intentional infliction of emotional distress claim is denied.

**E. FEHA Disparate Treatment Claims**

Plaintiff states general disagreement with the court's conclusions on the FEHA claims. Plaintiff raises issues generally, jumbled together, without necessarily arguing how specific acts give rise to different FEHA claims. The court will try to address the various factual allegations and place them in the proper legal context.

**1. Failure to Promote**

Plaintiff argues that he was denied a promotion in 2007 as evidenced by the Sept. 15, 2007 demand letter sent by his attorney. Defendant argues Plaintiff fails to show "how a demand letter is the same as a job application, and how it shows that Plaintiff was even eligible for a

promotion even if one did exist." Doc. 219, Opposition, 8:2-4.  A demand letter threatening litigation can constitute a formal legal claim under California law. See United States Specialty Ins. Co. v. Bridge Capital Corp., 482 F. Supp. 2d 1164, 1168 (C.D. Cal. 2007); College Park Realty, Inc. v. Topa Ins. Co., 2006 Cal. App. Unpub. LEXIS 3041, *1-2 (Cal. App. 4th Dist. Apr. 13, 2006).  However the court can not find any instance when a demand letter constitutes an application for promotion independent of the formal application process.  Again, the court points out that in this period, Plaintiff did not apply for any internal job openings using Defendant's online application system though he knew that was the process for promotion.  A person who makes an open ended demand for promotion (without referencing any specific opening or following the procedures) is not in the same position as a person who formally applies for a specific position through the set process.  Since Plaintiff can not show a denial of promotion within the statute of limitations period, Plaintiff can not rely on the continuing violations doctrine to bring in denials of promotion between 2002 and 2004.

**2. Parking**

Regarding FEHA, Plaintiff argues "Wal-Mart has no right to interfere with Plaintiff's civil right, and since it did, its conduct constituted both a material adverse action, and the more applicable adverse action, requiring this Court to allow Plaintiff's claims of discrimination, retaliation, and harassment to proceed. The Court failed to correctly apply the 'adverse' only employment action for accommodations." Doc. 207, Brief, 1:14-19.  Plaintiff's objections are unclear.  As stated in the summary judgment order, the evidence clearly shows that Plaintiff parked in the disabled spots by the store's front door for a few days before returning to the TLE disabled parking.  While denial of parking can constitute an adverse employment action, the change in parking in this case was minor and did not rise to that level.  Similarly, the change does not constitute a denial of reasonable accommodation.  As discussed above, Plaintiff has no private cause of action to enforce use of disabled parking spots within the employer-employee relationship.

**3. Reduction In Hours**

In the underlying briefing on the summary judgment, Plaintiff asserted that "Zane's hours were cut to part-time status, and he lost spousal health insurance for his wife." Doc. 192, Opposition, at 11:13-14.  The parties agree that Plaintiff worked an average of 30 hours per week (during the months he worked) between 2006 and 2009. Doc. 193, Plaintiff's SUMP, 17:14-18:14.  Further, while Plaintiff asserts that various managers tried to change his hours, there is no evidence to suggest that Plaintiff did not ultimately work his preferred schedule during these years, including taking his three months leave.  Plaintiff states "In October 2009, Mr. Victor Ramirez became the new Store Manager. In violation of my agreement with Wal-Mart he has cut my hours to less than 28 per week, and refused to grant me my agreed upon January and February Leaves of Absence." Doc. 190, Part 4, Ex. 6, Sept. 6, 2010 Hardin Declaration, 6:17-21 (7 of 58). Starting January 23, 2010, Plaintiff consistently worked less than 25 hours per week; Plaintiff was redesignated as a part-time employee on April 21, 2010. Doc. 193, Plaintiff's SUMP, at 21:16-26.  Plaintiff offers the statement of Ramirez (store manager) that, "there was a 15-week report, and if the employees had less than full-time hours, they would be cut to part-time status." Doc. 190, Part 8, Ex.10, Ramirez Affidavit, 8:17-19; Doc. 207, Brief, at 22:11-14.  Thus, Plaintiff's schedule was changed at the end of 2009, while Ramirez was in charge.

Plaintiff claims this was retaliation as Alvarado (assistant manager) threatened to fire him for parking in the TLE disabled spots; Plaintiff alleges "Recently Assistant Manager Robbie [Alvarado] told me that if I parked in the disabled parking in the TLE area, that I would be fired." Doc. 190, Part 4, Ex. 6, Sept. 6, 2010 Hardin Declaration, at 7:3-5 (8 of 58).  Alvarado confirms that he asked Hardin not to park in the TLE area, but states that the conversation took place "a long time ago, maybe three, four years ago" from 2011. Doc. 185, Part A, Ex. H, Alvarado Deposition, at 6:7-8 (36 of 60).  In the summary judgment order, the court considered the two accounts to be consistent and concluded that the conversation between the two to have taken place in 2007 or 2008, which was too far back in time to give rise to any inference of retaliation. Doc. 204, Order, 41:22-42:5. Plaintiff argues the court mistimed the event, ignoring Plaintiff's statement that the conversation with Alvarado "was years after the incident with Nash in 2007."

Doc. 190, Part 5, Ex. 7, Feb. 12, 2012 Hardin Declaration, 9:2-3 (10 of 35). Plaintiff asserts that the exchange happened after October 2009. Doc. 207, Brief, 22:16-21. Assuming Plaintiff is correct, there is another timing problem. Plaintiff stated on January 27, 2010 that no one has spoken to him about parking since February 2008. Doc. 185, Ex. E, Jan. 26, 2010 Hardin Deposition, 261:1-7 (23 of 42). Thus any altercation with Alvarado had to have taken place after his leave was denied and hours cut. There remains a lack of causation. Rudwall v. Blackrock, Inc., 2011 U.S. Dist. LEXIS 19147, *43-44 (N.D. Cal. Feb. 25, 2011) ("Rudwall's letter to managers could not have triggered his termination because it postdated an October 17, 2008 draft of BlackRock's cost reduction plan. This cost reduction plan named Rudwall among the employees to be terminated"). Again, Plaintiff provides the declaration of Ramirez (store manager) who said that when he took over the store in October 2009, the entire employee scheduling system changed: "the Company went to a different schedule. The new scheduling was based on your availability, and the computer would select you for your shifts....Zane's new schedule, like all schedules, was based on Wal-Mart's business needs...He complained he was not getting enough hours, and that they were not the same as before, and agreed upon. Other associates complained as well." Doc. 190, Part 8, Ex.10, Ramirez Affidavit, 6:21-25 (7 of 36). Plaintiff also provides the deposition of another employee who worked with him in the Sporting Goods section: "They're cutting, like, everybody's hours in Sporting Goods. Mainly I've noticed it's more of a cut in Sporting Goods, all of our schedules switched around." Doc. 190, Part 1, Ex. 3, Young Deposition, 30:17-20. Another problem with causation is the fact that scheduling was done by computer program. There is a question as to who the relevant decision-maker is in this scenario. Plaintiff has not provided any evidence that creates an inference that the decision-maker was motivated by discriminatory or retaliatory motive.

Under FEHA, "the threat of termination was a personnel management action that cannot be considered 'harassment.'" Lewis v. UPS, Inc., 252 Fed. Appx. 806, 808 (9th Cir. 2007). This is contrasted with Title VII jurisprudence in which "unfulfilled threats...should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct." Burlington Indus. v. Ellerth, 524 U.S. 742, 754 (1998). This is one of the instances in which

13

FEHA appears to provide less protection to workers than federal anti-discrimination law.  Since Plaintiff only sues under FEHA, Alvarado's unfulfilled threat is not a factor in determining if the evidence supports an inference of harassment.  Similarly, Plaintiff alleges that Nash also threatened to reduce and change Plaintiff's hours in 2007 after Nash told him not to park in the TLE disabled spots. Doc. 189, Part 1, January 27, 2010 Hardin Deposition, 376:11-22 (73 of 96).

**4. Use Of Stool**

Plaintiff asserts "Wal-Mart did not offer an official reasonable accommodation to Zane for 5 years, even though it knew he needed a stool accommodation" referencing his statement that "Wal-Mart finally provid[ed] me an authorized reasonable accommodation on July 26, 2011, after I requested it. For about 6 years Wal-Mart's personnel never offered me an official reasonable accommodation." Doc. 207, Brief, 6:5-7; Doc. 190, Part 5, Ex. 7, February 6, 2012 Hardin Declaration, 10:1-4 (11 of 35).  Plaintiff formally requested a stool on June 29, 2011, and Defendant provided it to him on July 26, 2011. Doc. 185, Part 1, Ex. F, December 28, 2011 Hardin Deposition, 529:14-530:23 (13 of 60).  Defendant's accommodation was reasonable and does not appear to be untimely given Plaintiff's request date.  Further, the evidence shows that after his accident in 2004, Plaintiff was allowed to use a stool until 2009.  There is very little clarity about this accommodation.  It is undisputed that Plaintiff's doctor advised him that he should not stand/walk more than two hours a day at first. Doc. 185, Ex. E, Jan. 26, 2010 Hardin Deposition, 89:5-18 (9 of 42).  A report on March 20, 2007 indicated that Plaintiff should not stand/walk more than four hours. Doc. 90, Part 4, (3 of 41).  By April 8, 2008, the doctor no longer advised any restriction on standing and walking. Doc. 186, Ex. O, Physician Activity Status Reports, (131 of 210).  Plaintiff then points out that his use of a stool was interfered with in 2009.  This record does not give rise to an inference that Defendant failed to reasonably accommodate or engage in an interactive process.

Plaintiff also appears to suggest that denial of a stool must be analyzed under public accommodations law. See Doc. 220, Reply, 9:9-12.  Plaintiff argues that the court applied the incorrect standard in the summary judgment order, citing to Wilson v. Murillo, 163 Cal. App. 4th

1124, 1136 (Cal. App. 1st Dist. 2008).  The language Plaintiff quotes specifically notes that the standard applies to retaliation in violation of the public accommodation requirements of the Americans With Disabilities Act. See Doc. 220, Reply, 10:16-11:6 ("a plaintiff need not demonstrate an adverse employment action when establishing a prima facie case of retaliation in the public services or accommodations contexts of the ADA").  As discussed previously, Unruh does not apply to the employer-employee relationship.  Plaintiff does not allege that he was denied use of any stool when he was at the store as a customer.

**5. Conclusion**

Plaintiff has not produced evidence sufficient to create an inference of adverse employment action, harassment, or failure to accommodate.  Reconsideration of the FEHA discrimination, retaliation, harassment, reasonable accommodation, and failure to engage in interactive process claims are denied.

**F. FEHA Disparate Impact**

Plaintiff argues that the summary judgment order did not address his disparate impact claim under FEHA.  Plaintiff is correct; that claim was not directly addressed.  In the complaint, explaining his disparate impact claim, Plaintiff states, "Wal-Mart has an employment practice of not promoting older and/or disabled workers, despite being well-qualified for available positions, and this policy has had a disproportionate impact on persons over 40, and disabled workers." Doc. 100, TAC, 18:4-8.  This is not a disparate impact claim, but rather disparate treatment.  In the briefing for the summary judgment, Plaintiff did not directly argue disparate impact.  Now, Plaintiff points out that he did allege "Wal-Mart has a company practice to hire young, healthy, single, part-time workers." Doc. 192, Opposition, 5:14-15.  Again, part of that statement speaks to disparate treatment rather than disparate impact.  The parts of the statement which may speak to disparate impact are "single" and "part-time."  Plaintiff is correct that this disparate impact theory must be addressed.

In order to establish a prima facie case of disparate impact, the plaintiff must: (1) identify

15

>the specific employment practices or selection criteria being challenged; (2) show disparate impact; and (3) prove causation; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. The statistical disparities must be sufficiently substantial that they raise such an inference of causation. The 'significance' or 'substantiality' of numerical disparities is judged on a case by case basis.
>
>Once the plaintiff establishes a prima facie case of disparate impact, the burden shifts to the defendant who may either discredit the plaintiff's statistics or proffer statistics of his own which show that no disparity exists. The employer may also produce evidence that its disparate employment practices are based on legitimate business reasons, such as job-relatedness or business necessity. Thereafter, the plaintiff must show that other tests or selection devices, without a similarly undesirable discriminatory effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship.

Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990), citations omitted.  In the case at hand, there is no indication that any statistical analysis has been undertaken. "Statistical proof is indispensable in a disparate impact case." Life Technologies Corp. v. Superior Court, 197 Cal. App. 4th 640, 650 (Cal. App. 1st Dist. 2011), citations omitted.  Additionally, there may be issues with the statute of limitations; the contours of Plaintiff's claim are unclear.

As disparate impact was not fairly raised in Defendant's summary judgment motion, Plaintiff must be given a full chance to respond.  An additional round of dispositive motions is warranted.

**G. Wrongful Demotion and Other Claims**

Plaintiff argues that the summary order did not rule on the wrongful demotion cause of action.  Plaintiff is correct that the summary judgment order did not address it directly; the court assumed it was a restatement of the FEHA claims, specifically his FEHA retaliation claim.  In the complaint, Plaintiff states that he was wrongfully demoted due to his "complaints of Wal-Mart's harassment, discrimination, retaliation and violation of his civil rights was a motivating reason for Zane's demotion." Doc. 100, TAC, 25:9-10.  For the purposes of this motion, the court assumes Plaintiff is seeking to make a claim for wrongful demotion in violation of public policy based on the public policy principles embodied by FEHA.  The prior order granted summary adjudication to Defendant on Plaintiff's FEHA retaliation claim, which specifically included

allegations of wrongful demotion.  When a plaintiff's FEHA claims are dismissed, the associated violation of public policy claims must similarly be dismissed. Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (Cal. App. 2d Dist. 1999) ("because Hanson's FEHA claim fails, his claim for wrongful termination in violation of public policy fails").  The disparate impact claim appears to be based on a failure to promote, but it is not clear.  Plaintiff may be asserting that Defendant's policy had a disparate impact that resulting in his reduction in hours.  Additionally, it is not clear whether a violation of public policy claim can be based upon a FEHA disparate impact claim

Plaintiff also seeks reconsideration of the Cal. Bus. & Prof. Code 17200 and negligent infliction of emotional distress claims.  Plaintiff asserts that both of them are dependent upon his FEHA claims.  Given that the parties are being given an opportunity to fully flesh out the disparate impact claim, these associated claims can be addressed in parallel in a subsequent motion.

### IV. Order

Plaintiff's motion for reconsideration is GRANTED in part and DENIED in part.  Reconsideration is granted for the disparate impact, wrongful demotion in violation of public policy, Cal. Bus. & Prof. Code 17200, and negligent infliction of emotional distress claims.  As those four claims have not been fully explored, an additional round of dispositive motions is warranted.

The parties are ORDERED to meet and confer about these four causes of action by June 8, 2012.  Defendant is directed to file a summary adjudication motion addressing these four causes of action (or a statement that Defendant does not seek summary adjudication and is prepared to go to trial on those causes of action) by June 27, 2012.

IT IS SO ORDERED.

Dated:   May 22, 2012

CHIEF UNITED STATES DISTRICT JUDGE