UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZANE HARDIN, | CIV-F-08-0617 AWI BAM |
| Plaintiff, | ORDER RE: DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION |
| v. | |
| WAL-MART STORES, INC.; and DOES 1-100, | |
| Defendants. | |

## I. History

Plaintiff Zane Hardin ("Plaintiff") has been an employee of Defendant Wal-Mart ("Defendant") for several years. Broadly, Plaintiff alleges that Defendant discriminated against and harassed him on the basis of age and physical disability, and then retaliated against him when he asserted his rights.

Plaintiff originally filed this case in state court on March 20, 2008; it was removed to federal court on diversity jurisdiction. The active complaint is the third amended complaint, which included fourteen causes of action: employment discrimination, retaliation, harassment, and denial of reasonable accommodation in violation of California's Fair Employment and Housing Act ("FEHA"); violation of California's Business & Professions Code § 17200; violation of California Civil Code §51; intentional infliction of emotional distress; breach of

1

contract; promissory estoppel; conversion; negligent infliction of emotional distress; wrongful demotion; and defamation. Summary adjudication was granted in favor of Defendants on all but the disparate impact related claims (disparate impact under FEHA, wrongful demotion in violation of public policy under FEHA, Cal. Bus. & Prof. Code § 17200, and negligent infliction of emotional distress claims). Defendant has made a motion for summary adjudication on these remaining claims which Plaintiff opposes.

## II. Legal Standards

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the

non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir.

2003).  If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000).

### III. Statement of Material Facts

**A. Defendant's Statement of Material Facts**

Plaintiff does not dispute any of Defendant's asserted facts.

1. On December 10, 2010, plaintiff filed his Third Amended Complaint.

2. On March 2, 2012, the Court granted Wal-Mart's Motion for Summary Judgment in its entirety and entered final judgment in this matter.

3. The Court ruled that plaintiff failed to meet the statute of limitations for his attempted failure-to-promote claim.

4. On March 7, 2012, plaintiff filed a Motion for Reconsideration of the Court's Order Re: Defendant's Motion for Summary Judgment.

5. On May 23, 2012, the Court ruled on plaintiff's Motion to Reconsider. The remaining causes of action of plaintiff's Third Amended Complaint following the Court's Order on plaintiff's Motion for Reconsideration are: (1) first cause of action for violation of FEHA disparate impact discrimination; (2) second cause of action for violation of CA Business & Professions Code §17200 to the extent it depends on a FEHA disparate impact claim; (3) tenth cause of action for negligent infliction of emotional distress to the extent it depends on a FEHA disparate impact claim; and (4) eleventh cause of action for wrongful demotion in violation of public policy to the extent that it is based on a FEHA disparate impact claim.

6. The Court's MTR Order allowed "an additional round of dispositive motions" relating to plaintiff's alleged disparate impact based claims. The Court noted "in the briefing for the summary judgment, plaintiff did not directly argue disparate impact. Now plaintiff points out that he did allege 'Wal-Mart has a company practice to hire young, healthy, single, part-time workers.'"

7. The Court noted that there is a statute of limitations issue with plaintiff's FEHA-based disparate impact theory.

8. The Court's MTR Order noted it had dismissed plaintiff's FEHA disparate treatment claim as beyond the statute of limitations. The Court's MTR Order confirmed that "Plaintiff can not show a denial of promotion within the statute of limitations period."

9. The Court's MTR Order noted that statistical analysis is "indispensable in a disparate impact case."

10. Plaintiff's first cause of action, count three, under FEHA states allegations under a "Disparate Impact" header.

11. Plaintiff's TAC alleged that "Wal-Mart has an employment practice of not promoting older and/or disabled workers, despite being well qualified for available positions, and this policy has had a disproportionate impact on persons over 40, and disabled workers."

12. Plaintiff's second cause of action alleged a violation of California Business & Professions Code §17200. He alleges that Wal-Mart has "A corporate structure that has created a business environment that fosters and encourages discrimination against the women and minority groups, including the aged and disabled."

13. Plaintiff's tenth cause of action alleged Negligent Infliction of Emotional Distress.

14. Plaintiff's eleventh cause of action alleged Wrongful Demotion in Violation of Public Policy based on "complaints of Wal-Mart's harassment, discrimination, retaliation and violation of his civil rights" allegedly resulting in reduction in hours, change in work days, and placement on part-time status.

15. Plaintiff was hired by Wal-Mart as an hourly Sporting Goods Associate when he was fifty-nine (59) years old.

16. Magistrate Judge McAuliffe noted in her Order on Discovery Motions that this is no more than a straightforward employment discrimination case.

17. Magistrate Judge McAuliffe noted at a discovery hearing that "this is one of those cases that has really just taken on a life of its own which is I find to be unnecessary to do so. It should be a clean cut, straightforward discrimination case."

18. Plaintiff's counsel listed the "core issues" of his claims against Wal-Mart during the January 18, 2012 discovery hearing before Magistrate McAuliffe and did not include any disparate impact claim.

19. Plaintiff's counsel has advised undersigned counsel that he anticipates Wal-Mart's Motion for Summary Adjudication will be granted for Wal-Mart.

20. Plaintiff's disability stems from a back injury sustained in October 2004, for which he has a mobile disabled placard for his car and a disabled license plate on his motorcycle.

21. Plaintiff continues to be employed by Wal-Mart store 2985 as Sporting Goods Sales

Associate.

22. The Court dismissed plaintiff's Wrongful Demotion in Violation of Public Policy for failure to show that he could prevail on a retaliation theory under FEHA.

23. Plaintiff alleged that he "applied for training for, and/or promotion for, numerous Department Supervisor management positions with Wal-Mart, and was wrongfully denied."

24. Plaintiff alleged "that Wal-Mart has an employment practice of not promoting older and/or disabled workers."

25. Plaintiff alleged he "was able to perform…essential job functions…of any of the Dept. Supervisor positions he applied for."

**B. Plaintiff's Statement of Material Facts**

1. On October 24, 2001 District Judge Martin Jenkins signed a Stipulation and Order that required Wal-Mart to secure company-wide virtually all of its documents.
    Undisputed but irrelevant.

2. Defendant Wal-Mart systemically violated Judge Jenkins Court Order by purging documents; failing to secure employment applications of others promoted over Zane; deleting emails by persons who worked with Zane; and not producing the written complaints and job application(s) he submitted to Wal-Mart.
    Undisputed but irrelevant.

3. Defendant Wal-Mart's Parking policy (PD-28) allows its Store Managers to determine where employees may park.

7

    Disputed.

4. Defendant Wal-Mart admits its policy PD-28 allows its Store Mangers to direct its disabled employees to not park in disabled parking spots.

    Disputed

5. Zane Hardin made written complaints to Defendant Wal-Mart of harassment, retaliation and discrimination.

    Undisputed.

6. In response to Discovery requests, Defendant Wal-Mart never produce Zane's written complaints or job application in violation of Judge Jenkins Order.

    Undisputed but irrelevant.

7. In 2010, Defendant Wal-Mart directed Zane to not park in the TLE disabled parking spot under threat of being fired, and Zane stopped parking there.

    Disputed.

8. In 2010 Wal-Mart cut Zane's hours, placed him on part-time status, and dropped his wife's health insurance coverage.

    Disputed.

9. Defendant Wal-Mart directed its legally disabled employee David Gallo to not park in TLE parking.

    Undisputed but irrelevant.

### IV. Discussion

All remaining claims in this case arise out of Plaintiff's disparate impact theory. Plaintiff

does not dispute any of Defendant's asserted material facts. "To establish prima facie case of disparate impact, a plaintiff must: 1) identify one or more specific employment practices at issue, 2) show a disparate impact on a protected class, and 3) establish a causal relationship between the practice(s) and the disparate impact. Once a plaintiff has established a prima facie case for disparate impact, the defendant can rebut in one of two ways: 1) it can directly attack plaintiff's statistical proof by pointing out deficiencies in the data or fallacies in analysis, or 2) it can proffer evidence that the challenged practice is job related for the position in question and consistent with business necessity." Lopez v. Pac. Mar. Ass'n, 2009 U.S. Dist. LEXIS 131439, *19-20 (C.D. Cal. Apr. 3, 2009). Under FEHA, "To prevail on a theory of disparate impact, the employee must show that regardless of motive, a facially neutral employer practice or policy, bearing no manifest relationship to job requirements, in fact had a disproportionate adverse effect on certain employees because of their membership in a protected group." Knight v. Hayward Unified School Dist., 132 Cal. App. 4th 121, 129 (Cal. App. 1st Dist. 2005).

**A. Specific Employment Practice**

In the Third Amended Complaint, Plaintiff specifically raises the theory of disparate impact and states "Wal-Mart has an employment practice of not promoting older and/or disabled workers, despite being well-qualified for available positions, and this policy has had a disproportionate impact on persons over 40, and disabled workers." Doc. 100, TAC, 18:4-8. A policy of not promoting older and/or disabled workers must be considered disparate treatment as opposed to disparate impact. However, Plaintiff also asserts "Wal-Mart Corporate Management has issued to Store Managers written and verbal directives and financial incentives to convert workers to part-time status, and thereby reduce health insurance costs, and to dissuade and [discourage] less healthy workers, like the aged and disabled, from working at Wal-Mart." Doc. 100, TAC, 8:23-9:1. Defendant argues that aside from theses general statements in the TAC, Plaintiff has not actually described what the employment practice objecteed to is: "Disparate impact analysis is only applicable to specific employment policies, rather than a full-scale challenge to an employer's practices. Plaintiff here clearly failed to meet this requirement when

he did not identify a particular practice." Doc. 236, Brief, 6:15-17.  "[T]he employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, 544 U.S. 228, 241 (2005), citations omitted.

In opposition, Plaintiff asserts two potential employment practices: "One, Defendant admits [its] PD-28 Parking Policy authorizes Wal-Mart Store Managers to direct its disabled employees to not park in disabled person parking spots. This policy has Disparate Impact on legally disabled employees, as they are the only employees that have the right to park in any legally designated [disabled] parking spots....Two, Defendant Wal-Mart has policies to hire and promote single, part-time, healthy workers." Doc. 259, Opposition, 2:2-12.

**1. Parking Policy**

Defendant's parking policy states:

> Wal-Mart provides Associates parking at work facilities as close to the facility as space will allow.  However, we reserve parking closest to our Stores and Clubs for our Customers and Members, and we provide accessible parking for people with disabilities, including Associates with disabilities. We reserve parking closest to our Home Office and other Administrative facilities for Visitors, and we provide accessible parking for people with disabilities, including Associates with disabilities.
>
> Associate with a disability means, for purposes of this Policy, an Associate who has a valid permit issued by the state Department of Motor Vehicles, which qualifies him/her to park in disabled accessible parking....
>
> The Facility Manager will designate areas for Associate parking at each facility, including parking for Associates with disabilities.

Doc. 263, Ex. 4, 36 of 37.  Plaintiff asserts "4. Defendant Wal-Mart admits its policy PD-28 allows its Store Managers to direct its disabled employees to not park in disabled parking spots." Doc. 257, 10:18-22 (UMF 4).

Defendant points out that the parking policy does not fit into disparate impact analysis: "Plaintiff, however, does not provide authority as to why this parking policy should or could be subjected to a disparate impact theory of a facially-neutral employment practice, as opposed to a parking policy. In addition, plaintiff's argument is essentially that the parking policy is

discriminatory on <u>its face</u> because the way plaintiff reads it is that it allows store managers to direct where a disabled employee may park." Doc. 271, Reply, 4:3-7.  While a parking policy that forced all employees to park in the same place, far from their place of employment, could be considered a specific employment practice that disparately impacted the disabled, that is not the parking policy at issue.  Instead, Plaintiff frames the specific employment practice as the ability of Store Managers to forbid any employee from parking in disabled parking spots.  "This policy has Disparate Impact on legally disabled employees, as they are the only employees that have the right to park in any legally designated [disabled] parking spots." Doc. 259, Opposition, 2:4-6. Only framed in this convoluted manner can Plaintiff assert the employment practice is arguably facially neutral, and thus, appropriate for disparate impact analysis.  Taken to its logical end, Plaintiff's version of a facially-neutral employment practice without disparate impact would be for Defendant to permit all employees to park in disabled parking, leaving issues of disabled parking enforcement to the police.  Plaintiff has provided no case authority dealing with this kind of specific employment practice in the disparate impact context; the court has not been able to find such cases.  The manner in which this specific employment practice is specified is really on the border between disparate impact and disparate treatment.  Though this interpretation of what constitutes the specific employment practice is rather tortured, it will be considered under disparate impact.

**2. Single, Part-Time Workers**

Plaintiff's second asserted specific employment practice is that "Defendant Wal-Mart has policies to hire and promote single, part-time, healthy workers." Doc. 259, Opposition, 2:10-12. A policy of hiring and promoting non-disabled workers would be disparate treatment, so the court will examine favoring single and part-time workers.  Defendant does not challenge the framing of this specific employment practice.  Favoring single employees could result in younger employees.  There does not appear to be an immediate connection that suggests single employees tend to be non-disabled, but the court is open to proof on that matter.  Regarding part-time workers, the key point is that Defendant does not provide part-time employees with health

insurance benefits.  This facially neutral policy could have a negative impact on the employment of older and/or disabled workers.

An openly stated preference for single and/or part-time employees could be specific employment practices.  However, Plaintiff has not provided evidence that Defendant actually has such a policy in place.  Instead, Plaintiff asserts "Defendant Wal-Mart has destroyed and failed to produce the documents necessary to prove up the claims. Therefore, the Court should make a finding of an adverse impact" Doc. 259, Opposition, 5:5-7.  Here, Plaintiff has conflated showing the existence of an employment practice with the actual impact of the practice.  He asks the court for a negative inference as to impact, but he has not established the existence of such a policy in the first place.  In this instance, Plaintiff has not shown evidence of a specific employment practice that can be subject to disparate impact analysis.

**B. Actual Impact and Causation**

Defendant asserts that "plaintiff neither gathered the requisite statistical information nor retained the expert(s) to interpret such information to establish even a prima facie disparate impact claim, let alone shift the burden to defendant, and finally prevail on it." Doc. 236, Brief, 3:7-9.  For the parking policy, Plaintiff says that "Statistical evidence is unnecessary because Defendant admits to the Disparate Impact." Doc. 259, Opposition, 4:24-25.

The court has already stated that "Statistical proof is indispensable in a disparate impact case." Life Technologies Corp. v. Superior Court, 197 Cal. App. 4th 640, 650 (Cal. App. 1st Dist. 2011).  Without such proof, a plaintiff can not show that there has been an actual impact on the allegedly discriminated against group.  Plaintiff cites to Stout v. Potter, 276 F.3d 1118, 1122-23 (9th Cir. 2002) for the proposition that "statistics not mandated" for a disparate impact claim. Doc. 270, Errata, 1:21-22.  An examination of that case does not support Plaintiff's assertion. Instead, it says "A prima facie case of disparate impact is usually accomplished by statistical evidence showing that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants. Although statistical data alone, in a proper case, may be adequate to prove causation, the statistical disparities must be

sufficiently substantial that they raise such an inference of causation." Stout v. Potter, 276 F.3d 1118, 1122 (9th Cir. 2002), citations omitted.

While it is a logical assertion that a policy of hiring part-time employees without health insurance benefits would discourage disabled persons with particular need of health services from applying, Plaintiff provides no actual, statistical proof that this is the case. Similarly, the parking policy for disable parking spots should only affect disabled employees, but Plaintiff provides no evidence that this has actually impacted Defendant employees in a statistically significant manner. The Ninth Circuit has recognized the necessity of statistical evidence in establishing disparate impact and not just relying upon asserting the logical consequences of a policy. See Lopez v. Pac. Mar. Ass'n, 657 F.3d 762, 767-88 (9th Cir. 2011) ("To create a genuine issue of fact under the theory that Plaintiff chose to pursue, Plaintiff must have produced evidence from which a fact-finder reasonably could conclude that the one-strike rule results in fewer recovered drug addicts in Defendant's employ, as compared to the number of qualified recovered drug addicts in the relevant labor market....We recognize the challenge involved in bringing a disparate impact claim of this kind, but both logic and precedent require him to produce some evidence that tends to show that the one-strike rule excludes recovering or recovered drug addicts disproportionately. Plaintiff introduced no such evidence. At the summary judgment stage, a party no longer can rely on allegations alone, however plausible they may be").

In lieu of statistics, Plaintiff points to documents in an unrelated case, Dukes v. Wal-Mart (Northern District of California, Civ. Case No. 01-2252). In that case, which is ongoing, Judge Martin Jenkins ordered Defendant in 2001 to preserve various employment records of its employees in the United States. Doc. 260, Ex. 1. Plaintiff argues that Defendant has violated Judge Jenkins orders by failing to preserve records relevant to Plaintiff's claims: "Five, Defendant Wal-Mart's Zobel testified that applications for individuals promoted over Zane are missing. Six, in response to Discovery requests, Defendant Wal-Mart never produced Zane's written complaints or job application in violation of Judge Jenkins Order. Seven, Defendant Wal-Mart produced Affidavits of its employees that worked with Zane, and they admitted they deleted emails, which violated Judge Jenkins Order." Doc. 259, Opposition, 3:10-18. Plaintiff's

argument does not excuse the evidentiary shortfall. Magistrate Judge Barbara McAuliffe has already heard and denied Plaintiff's related motion to compel. Doc. 246. Further, the records Plaintiff cites as missing are specific to Plaintiff himself and would not be sufficient for statistical analysis. Plaintiff still appears to be working to create a disparate treatment case. Regarding the parking policy, Plaintiff has not shown evidence of an actual impact.

## V. Order

Defendant's motion for summary adjudication of all remaining claims in this case is GRANTED.

IT IS SO ORDERED.

Dated:   December 17, 2012

UNITED STATES DISTRICT JUDGE